I won't call the day calendar. We'll proceed to our first case, Wynn v. Union Local 237, No. 19-962. Thank you. Good morning, Your Honors. May it please the Court, my name is Lino Esra, and I represent the appellants in this case. Before I start the substance of our argument, I would just like to bring to the Court's attention that in reviewing one last time over the weekend the Court of Appeals decision in Wynn 1, I noticed that on J Joint Appendix 65, JA 65, that this Court, the last time around, indicated that appellants had brought a Title VII action the first time around. That is not the case, as pointed out in our brief, as noted by the District Court Judge in the Wynn 2, as well as conceded by opposing counsel, the Union. You brought a disparate impact claim. I'm sorry? You brought a disparate impact claim. In Wynn 2, Your Honor. In Wynn 1, we brought it under 1981. And under 1981, you can only bring a disparate treatment claim. You cannot bring disparate impact. That's why we filed the EEOC, which we needed under Title VII before the District Court could have jurisdiction to entertain a Title VII. And that's why I mentioned that, because I felt that would be of significance. The first time around, we brought a disparate treatment. But the facts are the same. Yes, but the standard of proof is different, Your Honor, because under disparate treatment, you need to show intentional discrimination, which this Court You know, a lot of people would bring one lawsuit on the same set of facts. Yes, but we couldn't, because in our case, we needed to bring it under the Ledbetter Fair Pay Act, which is under Title VII. Before we can go to federal court under Title VII, we have to exhaust our administrative remedy. You really didn't hurry to do that. Sorry? You didn't hurry to do that. Well, that's true, Your Honor. But under the Fair Pay Act, each and every time, the employer or the employee gets a paycheck that is discriminatory or based on discriminatory reasons, in this case based on race, that starts a new statute of limitation, and that starts the clock running again. When was the first EEOC claim filed? The first EEOC claim was filed against the Housing Authority, but against the Housing Authority, I believe, in September of 2016. So that's like two years after the first lawsuit, right? Yes. But the union wasn't brought in until later in the amendment, but it was after that the first lawsuit was filed. And under the Second Circuit precedent, you can have a new lawsuit even if it's as a result of the same or continuous conduct, especially if the statute allows it. And we argued and we believe the Second Circuit agreed presidentially that the Lilly Ledbetter Fair Pay Act. The factual allegations, even if it was continuous conduct, they're based on the same allegations as the prior complaint, right? Yes, Your Honor. But we're allowed because the statute allows it. That's why Congress passed that law in 2009 to allow such claims. And the Second Circuit, as well as the Supreme Court in the Lewis case, which we cited, indicated that, you know, my clients can do that. Doesn't the Act cover only compensation decisions made by employers? And in this case, you've sued the union. Yeah. But as you recall, Your Honor, from when one, it was the union that contacted with the employer. And it was the union that influenced and impacted my client's discriminatory impacted compensation scheme by the housing authority. But nonetheless, it was not the union. I mean, the Lilly Ledbetter Pay Act speaks to employer action. And the employer is not the defendant here. Right. And the reason the employer is not the defendant here is because I'm still awaiting for a right to sue letter from the EEOC, which we visited the last time. Haven't we also said, though, I think it was in Woods v. Dunlop Tire Corporation, that you can't avoid res judicata by pointing to administrative exhaustion needs. If the substance of the facts, the collection of facts that you're relying on is the same, you can't bring successive actions, even if there are sometimes related administrative requirements. In that case, and in those cases, Your Honor, they dealt with retaliation claims. And the Second Circuit is very clear as far as retaliation claims. Once you bring a discriminatory claim and there is a retaliation as a result of that, you can always add it without having to go and administratively exhaust it. And I believe that that is a very important distinction. Also, I know you're saying that rule applies only with respect to subsequent retaliation claims. Is that right? That is my understanding, Your Honor, based on reading the case law on that. And we don't have a retaliation claim here. And we had no choice but to go through the EEOC to get the jurisdiction of the district court in Wintow, Your Honor. And I believe, Your Honor, in SEC v. First Jersey Securities, Inc., it stated that the plaintiff is not obligated to file any amendments to the complaint and may bring later suits to those claims that later arose. And it is our position that since each and every time my clients received the improper payment, because of the discriminatory impact that they were subjected to, that they could have brought a new claim. That's why they brought that claim. You're not saying if you get 12 paychecks, one a month in the course of a year, you can bring 12 lawsuits? No, but the statute of limitation runs every time. Because we're only up to three lawsuits right now, and you're promising a fourth one, I think. Well, Your Honor, it's because the law allows it, and Congress said that we can do it, and the Second Circuit, as well as the Supreme Court, has said that appellants or a plaintiff can do that. I'm just saying. Sorry? I'm just saying. Thank you. Your time's expired. You have three minutes, Frank, for rebuttal. We'll hear from Ms. Howell. May it please the Court, good morning. I'm Alexandra Howell. I represent Local 237 International Brotherhood of Teamsters. I also represented the Teamsters in the prior suit, so I'm quite familiar with both. I just want to start by highlighting that what's, I think, absent from the appellant's argument from their brief is an answer for why the duty of fair representation issue, which is a necessary element under both 1981 and Title VII, does not specifically preclude this suit under rejudicata. When a set of members, union members, bring a lawsuit against the union, they must prove the duty of fair representation. The underlying allegations that the appellants make in Win 1 are exactly the same as in Win 2 when it comes to the duty of fair representation issue. I highlight this specifically in my brief, and you can see it for yourself. In Joint Appendix 40, it's in my brief at page 22. In Win 2, appellants say that the union tacitly engaged in and or encouraged discriminatory conduct in its handling of appellant's complaints, and to disguise the union's tacit discriminatory pattern or practice, the subject minority appellants were designated the misclassified title of caretakers P. That allegation is identical in Win 1, and you can see that for yourself. So that matter has been litigated, and as this Court is aware, the relevant inquiry are the underlying factual allegations of the claim, not so much the claim itself. And as I'm sure your honors are also aware, the appellants waited nine months after the close of discovery to file their EEOC charge. They brought the union into the lawsuit in 2015. We could not think of a reason why so much time went by before an EEOC charge was filed. And take it to its logical extreme, as your honor pointed out, the appellants could sue us over and over and over again for the same conduct. The other thing I just wanted to point out is the relief that they're seeking is exactly the same. They're seeking relief for the same time period. So it's not just from the time period of Win 2. They want to go all the way back to 2010, and all that time has already been litigated. So even if it's true, which I don't believe it is, that a continuing course of conduct will permit them to sue us again, which I don't think is the case, even if it were, the relief they're seeking is exactly the same. Is there any circumstance in which the Ledbetter Act would help your adversary where there's a statute of limitations issue and this kind of claim is pursued? I never want to help my adversary, but perhaps if there were some new... Where the statute would tolerate it. Sure. If there were some new allegation, an actually new allegation, a new violation of the duty of fair representation that didn't occur in 2007 or 2010 at the latest, perhaps. And I would think that the employer would be a necessary party. Suppose there's a new contract, and under the new contracts, the Mason helpers get a prevailing wage of, say, $3,755, and the plaintiffs get $2,275. It's a new contract. Wouldn't there be a new breach of the... I mean, you'd have the same duty of representation, wouldn't you? Well, the union always has the same duty of representation. Yes. But I think in the facts in this case, let's just say there is a new contract, and I believe there was a new one in 2010, and there's always a new one. The actual breach that they're talking about occurred in 2007, when the union went to the comptroller's office to attempt to get them prevailing wage and then agreed to these expanded duties. That's really what precipitates, in their view, what precipitates the violation of the duty of fair representation. And that already occurred. So even if there were a new contract, it would be a continuation of the same alleged wrong, because what happened, from their perspective, is it's the addition of those duties that make them comparable to plaster or helpers in the private sector. So it wouldn't matter, because the new contract isn't the thing that they're arguing is violated. It's the fact that we agreed back in 2007. No, you seem to be arguing, then, that the discrimination can get baked in, in one contract, if it's challenged, and then even if new people join the union, they just have to live with the putatively discriminatory wage. Well, that would assume that the wage is discriminatory. I said putatively, but that's what they're alleging. So I guess it depends on what the actual violation, what's the violation of the duty of fair representation. Is negotiating the new contract the violation of the duty of fair representation? No, because it's the same exact wrong, from their perspective, that has occurred and occurred and occurred. So it's really, from their perspective, this occurred in 2007. So every new contract is really a continuation of the same thing, because they're still doing the same duties, and those duties were negotiated in 2007. That's where they're saying the union went wrong. No, but you are saying, then, that the discrimination is, as it were, baked in. I guess. It's baked in. It might be. Every new contract has the same thing, because it was determined that there was no breach of the duty of fair representation in 2007 when this discrepancy, this alleged discrepancy arose. Right. All right. If there are no other questions, I'll take my seat. Thank you so much. Thank you. Mr. Nwesri, you have three minutes of rebuttal. Just a couple of follow-up points. Your Honor, the local is the exclusive bargaining agent of my clients. They can only go through them. And the duty of fair representation that was breached is the fact that they agreed to a contract with the housing authority. The contract stated that they will be considered to be planster helpers, and then this Court had dispelled any issues with regard as to whether my clients were entitled to prevailing wages. This Court in win one said that they would be entitled to it because the union, as well as the employer at the time, were claiming that because they were noncompetitive laborers, class of laborers, they weren't entitled to it. That was dispelled by this Court in win one. Also, the fact that they entitled to prevailing wages was dispelled by this Court in win one as well. We're arguing that the union has a continued obligation to make sure that the client, especially in light of the decision in win one, to make sure that they get paid the prevailing wages as plaster helpers. To date, they have not done that. And, therefore, that is the continued breach of their duty of fair representation with regard to my clients. If not race judicata, what's to stop you from bringing win three and four and five? I'm sorry? Other than race judicata, what's to stop you from bringing win three, four, and five? If your theory is that this is a continuing course of conduct, it seems like you're leaving the door open or you'd like the door to remain open for an unlimited number of lawsuits. No, Your Honor. The difference is win one was brought under a different theory of discrimination, which was disparate treatment. This one is brought under disparate impact. If there is a decision that there was no disparate impact, which that is not the case, there hasn't been any decision on the merits because it was dismissed pursuant to 12b-6 on the pleadings. If there is eventually a decision based on the merits that there was no disparate impact discrimination, then they can't come back again and again and again, just to reassure this Court. But because the standard is different and the proof is different, we believe that they should be entitled to proceed under their Lilly Ledbetter Fair Pay Act disparate impact. You're saying as long as there's a new theory, even if the facts haven't changed, you can bring a new suit. Is that what you're saying? Well, if it hasn't been decided with regard to that because the Court didn't have a chance to address it, then yes. The reason that win two was brought is because we had to exhaust through the EEOC the Title VII. Thank you very much. I think we have the arguments. We'll reserve decision. Thank you.